UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROBERT KEYS, JR.,                                                            Plaintiff,

v.                                                        Civil Action No. 3:15-cv-645-DJH

MONUMENT CHEMICAL KENTUCKY,
LLC,                                                                         Defendant.

\* \* \* \* \*

# MEMORANDUM OPINION AND ORDER

Plaintiff Robert Keys began working for Defendant Monument Chemical Kentucky in December 2012. (Docket No. 20, PageID # 192) Keys claims that his termination in July 2015 was retaliation for taking leave pursuant to the Family and Medical Leave Act (FMLA) due to a wrist injury. (D.N. 1) Monument contends that from the time Keys was hired, he struggled with attendance and was fired for "excessive absenteeism." (D.N. 19-1, PageID # 65) Keys filed suit, claiming (1) FMLA retaliation, (2) FMLA interference, (3) disability discrimination in violation of the Americans with Disabilities Act (ADA), (4) failure to accommodate him in violation of the ADA, and (5) violations of state wage laws. (D.N. 1) Monument filed a motion for summary judgment. (D.N. 19) Because there is a genuine dispute of material fact with respect to Keys's FMLA retaliation claim but no other claims, Monument's motion for summary judgment will be granted in part and denied in part.

I.      **BACKGROUND**

Robert Keys worked as a Production Shift Supervisor at a chemical plant owned and operated by Monument Chemical Kentucky in Brandenburg, Kentucky. (D.N. 19, PageID # 60) Monument acquired the facility from Arch Chemical Company in December 2012. (D.N. 20, PageID # 192) Monument hired Keys to his supervisor position when it took over the plant.

1

(*Id.*)  Keys worked a twelve-hour rotating-shift schedule, meaning he worked thirteen or fourteen days each month and many of the shifts were at night.  (D.N. 19-1, PageID # 63)

The following facts regarding Keys's absences are undisupted.  On October 26, 2013, Keys sprained his ankle at work and was out on worker's compensation leave until December 23, 2013.  (D.N. 19-3, PageID # 84, 87)  In January 2014, Keys reinjured his ankle at home and was off work from January 24, 2014 to March 4, 2014.  (*Id.*, PageID # 84)  During 2014, Keys also took a number of sick days and personal days.  (D.N. 19-4, PageID # 182)  Keys exhausted the five sick days that he was granted for the year by October, but he called in sick at least two more times.  (*Id.*)  On November 24, 2014, Keys's supervisor and two employees from Monument's Human Resources office held a meeting with him to discuss his attendance issues.  (D.N. 19-3, PageID # 89)  Keys told the group that his attendance issues were caused by frequent illnesses and having to take his wife, who has lupus, and daughter, who has multiple sclerosis, to medical appointments.  (D.N. 19-1, PageID # 63; D.N. 19-4, PageID # 162)  Keys's supervisor asked Keys to schedule appointments during his non-working hours and warned Keys that he needed to improve his attendance or risk losing his job.  (D.N. 19-4, PageID # 162–63)

Shortly thereafter, in December 2014, Keys was granted short-term medical leave and missed several days of work because of a non-work-related knee injury.  (D.N. 19-1, PageID # 63)  Monument contends that "Keys did not receive any disciplinary or other adverse action as a result of these various injuries or leaves and resulting restrictions."  (*Id.*, PageID # 62)

In January 2015, Keys injured his wrist at home and required surgery.  (*Id.*)  Keys returned to work for several days with restrictions prior to his surgery on February 5, 2015.  (*Id.*)  Keys was granted FMLA leave for the surgery and recovery.  (*Id.*)  With the exception of "one day of off-site training for which he was released by his doctor and permitted to attend, this

2

surgery kept Keys off work for 13-weeks until May 11, 2015." (*Id*.) Monument claims that it accommodated Keys's physical restrictions when he returned to work on May 11, 2015. (*Id*.) While Keys agrees that he received this leave, he claims that he wanted to return to work earlier than May 11 but Monument denied his request. (D.N. 20, PageID # 198)

After Keys returned to work on May 11, 2015, he missed work on June 12, 2015 for "reported wrist pain" and June 18, 2015 for a doctor's appointment. (D.N. 19-1, PageID # 64) Monument points out that Keys was scheduled to have June 16 and June 17 off from work, and June 18 "was the day before a scheduled vacation for Keys." (*Id*.) Monument states that Keys could have easily scheduled his appointments when he was not working because he was only scheduled to work three to four shifts per week and many were night shifts. (*Id*.)

On July 2, 2015, Monument terminated Keys for "excessive absenteeism." (*Id*., PageID # 65) According to Monument, Keys was warned about his poor attendance on an annual basis beginning in 2011. (*Id*.) Monument states that during his 2013 mid-year review, Keys was informed that he had missed fourteen shifts due to illness, doctor's appointments, and funeral leave, and he was asked to improve his attendance. (*Id*.) Monument claims that it again warned Keys about his attendance at the end of 2013, on several occasions in 2014, and in February 2015 as part of his 2014 year-end review. (*Id*., PageID # 63–64)

Keys asserts that his absences were covered by Monument's leave and absence policies. (D.N. 20, PageID # 193) According to Keys, his absences were due to illness, medical appointments, and funeral leave and were covered by a combination of his personal days, sick days, vacation days, FMLA leave, "comp" days, and shift-trading. (*Id*., PageID # 193–95) Keys was granted five to six sick days annually, and he contends that the only day he was absent that

was "not scheduled off in advance as a vacation or personal/sick day following his return from FMLA leave in May, was June 12, 2015." (*Id.*, PageID # 195)

On July 30, 2015, Keys filed suit against Monument, alleging retaliation and interference under the FMLA and discrimination and failure to provide a reasonable accommodation under the ADA, as well as violations of state wage law. (D.N. 1) Monument moved for summary judgment, arguing that it did not "interfere with, or retaliate against, Keys for his use of FMLA leave"; that Keys failed to exhaust his administrative remedies, as required by the ADA; and that it did not violate state wage laws because it paid Keys what he was owed upon termination. (D.N. 19-1) Alternatively, Monument asserts that Keys has not established a prima facie case of disability discrimination under the ADA and that it accommodated his alleged disability. (*Id.*) Keys responds that there are genuine disputes of material fact regarding his FMLA, ADA, and wage-law claims and thus summary judgment is inappropriate. (D.N. 20)

## II. DISCUSSION

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In considering a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), but "the judge's function is not himself to weigh the evidence

4

and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

### A. FMLA Retaliation

"The Family and Medical Leave Act . . . entitles eligible employees to a total of 12 weeks of leave per year for various reasons, including because of 'a serious health condition that makes the employee unable to perform the functions' of his or her position." *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 348 (6th Cir. 2013) (quoting 29 U.S.C. § 2612(a)(1)(D)). To establish a prima facie claim of retaliation under the FMLA, a plaintiff must show:

> (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.* (citing *Seeger v. Cinci. Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012); *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)). The Sixth Circuit has held that a temporal proximity of two months between protected activity and adverse action is sufficient to establish a prima facie causal connection. *See Seeger*, 681 F.3d at 284 (citing *Clark v. Walgreen Co.,* 424 F. App'x 467, 473 (6th Cir. 2011) (per curiam)).

"[O]nce a plaintiff offers sufficient indirect evidence to support his *prima facie* FMLA claim, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Tillman*, 545 F. App'x at 349 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Seeger*, 681 F.3d at 284). "If the

employer articulates a legitimate reason for its action, the burden of production shifts back to the plaintiff to demonstrate pretext." *Id*. (citing *Seeger*, 681 F.3d at 285).

To survive a motion for summary judgment, "the plaintiff must allege more than a dispute over the facts upon which his discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). The plaintiff "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Id*. (citing *Smith v. Chrysler*, 155 F.3d 799, 806–07 (6th Cir. 1998)). "[T]o determine whether the defendant had an 'honest belief' in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Id*. (citing *Smith*, 155 F.3d at 807). In other words, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Smith*, 155 F.3d at 806).

There is no dispute that Keys has met his burden of demonstrating a prima facie claim of FMLA retaliation. *See Tillman*, 545 F. App'x at 348. Keys took FMLA leave for his wrist injury, and Monument knew that he was taking FMLA leave. (D.N. 19-1, PageID # 62) Because the termination occurred less than two months after his FMLA leave, Keys has established a prima facie causal connection. *See Seeger*, 681 F.3d at 284. Therefore, the burden shifts to Monument to establish a legitimate, nondiscriminatory reason for terminating Keys. *See Tillman*, 545 F. App'x at 349.

Monument claims that it fired Keys for "excessive absenteeism." (D.N. 19-1, PageID # 64–65) Monument states that it warned Keys about his absences prior to his FMLA leave, "and that it followed through on [those warnings] when Keys continued to call off work despite his scheduled shifts when he returned to work." (*Id*., PageID # 69)

Keys responds that Monument's stated reason is pretextual and alleges that his absences on June 12, 2015 and June 18, 2015 were covered by Monument's policies regarding FMLA leave, sick days, and shift-trading. (D.N. 20, PageID # 205–14) First, Keys disputes that he exhausted his FMLA leave. Keys claims that he was cleared to return to work as early as February 19, 2015. (*Id*., PageID # 208) Next, Keys argues that even if he exhausted his FMLA leave, "he had at least 4 personal/sick days and 23 vacation days available." (*Id*.)

The record contradicts Keys' argument that he tried to return to work as early as February 19. In his deposition, Keys agreed that Monument had a policy that he could not return to work with a hard cast on his wrist. (D.N. 24-2, PageID # 513) According to Keys, he was to be in either a cast or splint until at least April 21, 2015, when he was scheduled to have a second surgery to remove the pins that were inserted during the first surgery. (*Id*.) Therefore, other than attending a training on March 11, 2015, Keys acknowledged that he expected to return to work no earlier than April 21, 2015. (*Id*.) This understanding of his return date is further supported by emails from his supervisor, David Spalt, to several human resources employees on May 8, 2015, stating, "Can we meet in the near future to discuss Andy Key's [sic] return to work? Can we send him to our occupational health clinic to be evaluated? He doesn't do physical work so I don't see why he can't come back. I believe he is dragging this out." (D.N. 20-32, PageID # 375)

However, with respect to Keys's second argument, there is a genuine dispute of material fact. Monument provided employees with five to six sick days each year. (D.N. 20, PageID # 219–20; D.N. 20-10, PageID # 261) In 2015, June 12 and June 18 appear to be the only days that Keys missed other than his thirteen weeks of FMLA leave. (D.N. 20, PageID # 219–20) Therefore, his absences were arguably covered by Monument's sick leave policy. Additionally, several emails from David Spalt, Keys's supervisor, indicate that shift-trading was common practice and also could have covered Keys's missed days. (D.N. 20-10, PageID # 260–61)

On the other hand, the record contains evidence that Keys's absences were not covered by sick days or shift trades because he did not follow the proper internal procedures for notifying his superiors of his use of these days. In an email dated June 30, 2015, Keys writes that he "didn't report the days I took since I thought it was part of the accommodations as to returning to work. I will in the future make sure you are notified in a timely manner if anything comes up." (D.N. 20-35, PageID # 387)

Determining whether Keys would have been terminated because of his absences had he not taken FMLA leave would require the Court to weigh the evidence and make credibility determinations. *See Anderson*, 477 U.S. at 249; *see also Marshall v. The Rawlings Co.*, No. 16-5614, 2017 WL 1404185 (6th Cir. Apr. 20, 2017); *Gates v. U.S. Postal Serv.*, 502 F. App'x 485, 490–91 (6th Cir. 2012). Monument has presented evidence that Keys was terminated for excessive absenteeism after being warned repeatedly about his absences and continuing to miss work after he returned from FMLA leave. (D.N. 19-1, PageID # 64–69) However, Keys has created a genuine dispute of material fact by providing evidence that his absences were covered by Monument's policies regarding FMLA leave and sick/personal days and shift-trading. (D.N. 20, PageID # 205–14) At this state of the proceedings, the Court will not weigh this evidence.

*See Anderson*, 477 U.S. at 249. Therefore, the Court will deny Monument's motion for summary judgment on Keys's claim of FMLA retaliation.

### B. FMLA Interference

Keys also asserts a claim of FMLA interference. (D.N. 1, PageID # 4) "Under the FMLA interference theory, '[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer.'" *Marshall*, 2017 WL 1404185, at *10 (alteration in original) (quoting *Seeger*, 681 F.3d at 282). To establish a prima facie case of FMLA interference, the plaintiff must show that "(1) he is an eligible employee; (2) the defendant is an employer as defined in the Act; (3) he was entitled to leave under the FMLA; (4) he gave the defendant notice of his intention to take leave; and (5) the defendant denied him FMLA benefits to which he was entitled." *Tillman*, 545 F. App'x at 351.

Keys claims that Monument interfered with his FMLA rights by punishing him for going to a doctor's appointment on June 18, 2015. (D.N. 20, PageID # 208) However, there is no evidence that Keys requested FMLA leave for this doctor's appointment. Additionally, Keys admits that he was granted his requested FMLA leave from February 5, 2015 to May 11, 2015, and returned to his position as a Production Shift Supervisor following his FMLA leave. (D.N. 20, PageID # 194–95) Because Keys has not shown that Monument failed to provide him with FMLA leave or interfered with his FMLA leave, Monument's motion for summary judgment on this claim will be granted.

### C. ADA Claims

Keys also claims that Monument violated the ADA by discriminating against him because of his disability and failing to accommodate him at work. (*Id.*, PageID # 215)

9

"The exhaustion of administrative remedies is a condition precedent to an ADA action." *Id.* (citing *Zipes v. TWA,* 455 U.S. 385, 392–398, (1982); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000), *cert. denied*, 533 U.S. 951 (2001); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998)). "To exhaust administrative remedies under the ADA or ADEA, a plaintiff must file an EEOC charge within 180 days of the alleged discrimination (or with the state agency within 300 days)." *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) (citing 29 U.S.C. § 626(d); 42 U.S.C. §§ 12117(a) and 2000e–5(e)(1); *Parry*, 236 F.3d at 309). "Once the EEOC dismisses the charge and issues a right-to-sue letter, the plaintiff has ninety days to file a civil action." *Id.* (citing 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(f)(1)). "Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of an ADA or ADEA action." *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 753 (1979)).

The parties do not dispute that Keys failed to exhaust his ADA claims. (D.N. 20, PageID # 214–15) However, Keys argues that his "ADA claim[s] should not be dismissed solely on the basis of a failure to exhaust remedies argument" because they "arise out of the same set of facts and are inextricably linked" to his FMLA claims. (*Id.*) Without citing any case law for support, Keys asserts that if he "were required to file a separate EEOC claim for disability discrimination based upon the same set of facts, then there would be an undue burden on him of having to litigate two separate claims in two different forums." (*Id.*) In fact, as Monument points out in its response, it is not unusual for a Court to reject an ADA claim for failure to exhaust and separately consider a FMLA claim. *See Perry v. Am. Red Cross Blood Servs.*, 651 F. App'x 317 (6th Cir. 2016); *Garner v. Falcione*, 173 F.3d 855 (6th Cir. 1999). Therefore, Keys's argument is unavailing.

Because Keys failed to exhaust his ADA claims, Monument's motion for summary judgment will be granted with respect to those claims.

**D. State Law Wage Claims**

Finally, Keys claims that he is owed wages for four unused personal/sick days pursuant to Ky. Rev. Stat. § 337.060. (D.N. 20, PageID # 219–20) In relevant part, Section 337.060 provides that "[n]o employer shall withhold from any employee any part of the wage agreed upon." Ky. Rev. Stat. § 337.060(1).

According to Keys, he had used two of his six sick/personal days for 2015 when he was terminated; however, Monument's termination form stated that he had no personal days available. (*Id.*) Therefore, Keys argues that he is owed money for those four uncredited personal/sick days. Monument disputes this claim, arguing that Keys admits that he was paid for these days. (D.N. 19, PageID # 76)

In his deposition, Keys stated that he was paid for his unused personal days when he was terminated during the following exchange:

> Q: Okay. Now, with respect to Paragraph 22 it says, "Keys has not been paid for his earned, but unused vacation time and personal days." You were subsequently paid that, were you not?
>
> A: Vacation time, yes.
>
> Q: And your personal days? You were paid up – between the time you filed the complaint, I guess, and today, you've been paid those monies?
>
> A: Yes.
>
> Q: And you were paid them pretty close to the point you left the Company?
>
> A: Yes. It was the next pay period or maybe one after that.

(D.N. 19-3, PageID # 95)

The Court may consider a plaintiff's self-defeating testimony when reviewing a defendant's motion for summary judgment. *See Tiller v. 84 Lumber Co.*, 886 F.2d 1316 (Table), at *4 (6th Cir. 1989); *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986). For example, in *Bennett v. Schroeder*, the plaintiff filed a § 1983 claim against several police officers, including Officer Donald Schroeder, claiming that the police lacked probable cause to arrest him. 99 F. App'x 707 (6th Cir. 2004). Officer Schroeder was listed as one of the arresting officers in the Investigation and Arrest Report. *Id*. at 713–14. However, the plaintiff's interrogatory answers and the testimony of Officer Schroeder both indicated that Officer Schroeder was not personally involved in the plaintiff's arrest. *Id*. As a result, despite the report, the Sixth Circuit found that there was no genuine dispute of material fact and held that "summary judgment was properly entered in favor of Officer Schroeder." *Id*. at 714.

As in *Bennett*, Keys directly contradicted his proffered evidence and thus defeats his own claim. *See id*. at 713–14. Keys admitted during his deposition testimony that he was paid for his unused personal days. (D.N. 19-3, PageID # 95) Therefore, other than the termination form, which Keys himself refuted, there is no evidence in the record to support Keys's contention that the defendants failed to pay Keys for his unused personal days. (*Id*.) Because Keys's testimony establishes that he was paid for his unused personal days, the Court concludes that there is no genuine dispute of material fact as to this claim and will grant summary judgment. *See Bennett*, 99 F. App'x at 713–14.

## III. CONCLUSION

For the reasons explained above, the Court will grant in part Monument's motion for summary judgment. (D.N. 19) Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The defendant's motion for summary judgment (D.N. 19) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Counts I, III, IV, and VI of the complaint. The motion is **DENIED** as to Counts II and V.

(2) The Court will schedule a status conference by subsequent order.

May 17, 2017

**David J. Hale, Judge**
**United States District Court**

13